John J. CAPUANO, Administrator of the Estate of John D. Capuano et al.

v.

KEMPER INSURANCE COMPANIES.

No. 80–402–Appeal.

Supreme Court of Rhode Island.

Aug. 19, 1981.

---

Seth K. Gifford, Providence, George F. McDonald, Steven J. Ferdinandi, Cranston, for plaintiffs.

Carroll, Kelly & Murphy, Joseph A. Kelly, C. Russell Bengtson, Providence, for defendant.

1. Pursuant to chapter 30 of title 9 of G.L. 1956 (1969 Reenactment), the Uniform Declaratory Judgments Act.

## OPINION

MURRAY, Justice.

This case comes before the court on an appeal by the defendant, Kemper Insurance Companies (Kemper), from a judgment of the Superior Court entered on a complaint for declaratory relief [1] by the plaintiff, John J. Capuano, in which he sought a determination of the amount of insurance coverage available to him in a pending wrongful-death action.

On July 24, 1977, at approximately 1 a. m., John D. Capuano and Kevin M. Synon (Synon) were both killed in a one-car collision in which the 1969 Chevrolet Corvette in which they were both traveling crashed into a stone wall in South Kingstown and was demolished. At the time of the mishap the Corvette was registered to Synon's grandmother, Vera DiSandro (DiSandro). As a result of the fatal collision, John J. Capuano, the administrator of the deceased Capuano's estate, instituted a wrongful-death action in the Superior Court against DiSandro in her capacity as the administratrix of the Synon estate. DiSandro subsequently filed a counterclaim against plaintiff in which she alleged that Capuano was the operator of the Corvette at the time of the accident and that his negligence was the cause of the collision and of the death of the two young men. Both parties sought recovery in the amount of $500,000.

On December 7, 1979, plaintiff instituted this action in the Superior Court for a declaratory judgment in which he sought to determine the amount of insurance available to the Capuano estate in defense of DiSandro's counterclaim for wrongful death.[2] The case was submitted by the parties to a justice of the Superior Court on an agreed statement of facts. The context of the present controversy may best be understood by detailing these facts in chronological order.

2. An order was subsequently entered by a justice of the Superior Court, granting Vera DiSandro's motion to intervene as a party plaintiff.

On June 8, 1974, Kemper, through its company, Lumberman's Mutual Casualty Company, issued an automobile insurance policy (No. VZ425 057) to Vincent DiSandro.[3] The insurance agency representing the insured in connection with this policy was the Laren Insurance Agency of Providence, Rhode Island. That policy covered a 1969 Oldsmobile and provided for $100,000 in bodily-injury coverage. By an endorsement dated October 22, 1974, Synon, the grandson of Vincent and Vera DiSandro, was added to the policy as an additional driver. Another endorsement on June 10, 1977, added the 1969 Corvette as a second insured vehicle under the policy. Vera DiSandro was listed on the policy as the registered owner of the Corvette.

Kemper, upon receipt of the latter endorsement, wrote to the Laren Agency on June 22, 1977, requesting that it eliminate Synon and the Corvette from the policy. Kemper added that "[u]nless this vehicle is eliminated from the policy, we will have no other choice other than to issue nonrenewal notices."[4] On June 28, 1977, Laren notified Kemper that it would "delete vehicle and driver as soon as we have same placed with assigned risk."

On that same day, Insurance Underwriters, Inc. (Underwriters), which apparently in some way is associated with the Laren Agency, wrote to Synon, informing him that Kemper would not insure the Corvette under the DiSandro policy. As an alternative, Underwriters suggested coverage under the Rhode Island Automobile Insurance Plan (Rhode Island Plan) and enclosed an application form. On July 20, 1977, Underwriters received Synon's application along with a premium payment in the amount of $579.20. That same day, Underwriters issued a binder of insurance to Synon for $25,000 bodily-injury coverage on the Corvette. Also that same day, Underwriters forwarded Synon's application and premium to the Rhode Island Plan in New York and asked for assignment to a company for immediate coverage. The Rhode Island Plan received Synon's application on July 22, 1977. Two days later, on July 24, 1977, the fatal accident occurred. On July 25, 1977, Underwriters notified Kemper concerning the DiSandro policy, stating, "Effective 7/20/77 please delete 2d car, a 1969 Corvette. As of this date vehicle was placed [sic] in assignment risk." The following day, the Rhode Island Plan assigned the risk of Synon's coverage to Lumberman's Mutual Casualty Company. Subsequently, Lumberman's issued a policy (No. WE472 841) to Synon covering the Corvette and providing for $25,000 in bodily-injury coverage. The policy was made effective from July 20, 1977, to July 20, 1978.

Several months later, DiSandro requested that her policy (No. VZ425 057) be canceled. Kemper issued a declaration cancelling coverage on the Corvette, effective July 20, 1977. Kemper also issued DiSandro a check in the amount of $382.50 as a premium rebate.

On February 20, 1978, Underwriters told Kemper to cancel Synon's policy (No. WE472 841) as of July 25, 1977. Kemper canceled the policy and issued a premium rebate of $1,423.63 to Synon's estate.

Capuano contended before the trial justice, as he does now, that both policies (Nos. VZ425 057 and WE472 841) covered the Corvette and the driver at the time of the accident; No. VZ425 057 because Kemper had not deleted coverage of the Corvette from the policy or canceled the policy, and No. WE472 841 by reason of the binder issued by Insurance Underwriters. Kemper, on the other hand, contended that only Synon's policy (No. WE472 841) was effective on the date of the collision, and thus only $25,000 in coverage was available to the Capuano estate.

In his decision, the trial justice found that although the facts indicated that Kemper's initial correspondence with the Laren Agency concerned the possibility of Kem-

---

3. Upon the death of Vincent DiSandro, the name of the insured was changed to Vera DiSandro, his wife.

4. The insured's policy with Kemper was scheduled to expire on December 8, 1977.

per's exercising its option of nonrenewal in the event that Synon and the Corvette were not deleted from the DiSandro policy, the end result was a cancellation of coverage under the policy by Kemper. In such circumstances, the burden was on Kemper to prove that it complied with the cancellation provisions of the policy. Because there had been no effective cancellation or deletion of coverage under the policy by Kemper, the trial justice concluded that both policies of insurance (Nos. VZ425 057 and WE472 841) were in effect at the time of the accident, and he declared that the amount of insurance coverage available to plaintiff in the pending wrongful-death action was $125,000, the sum of both policies. A judgment incorporating the findings in the trial justice's decision was subsequently entered, from which Kemper has brought the present appeal.

Before us, Kemper contends that the trial justice erred in ruling that the DiSandro policy was in effect on the date of the collision. In support of this contention, Kemper advances several arguments that can best be resolved by discussing each separately while detailing the trial justice's findings pertinent thereto.

Kemper argues first that at the time of the accident the DiSandro policy was in full force and effect. It contends that the deletion of coverage of the Corvette from the policy did not constitute a cancellation of the policy; thus, Kemper was not required to comply with the cancellation procedures provided for in the policy issued to plaintiff.

The cancellation clause of the policy in question, in pertinent part, reads as follows:

"This policy may be cancelled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective."

■ Generally, the purpose of a notice-of-cancellation clause in an insurance policy is for the benefit of the insured. It is intended to make the insured aware that

his policy is being terminated and to afford him time to obtain other insurance prior to termination of the existing policy. *See Taylor v. MFA Mutual Insurance Company*, 322 So.2d 842, 845 (La.App.1975); *Buffalo Insurance Company v. Best*, 312 S.W.2d 270, 271 (Tex.Civ.App.1958). When insurance coverage is being canceled, public policy demands strict compliance with the cancellation provisions of the policy. *See United Farm Bureau Mutual Insurance Co. v. Adams*, 145 Ind.App. 516, 251 N.E.2d 696 (1969). As one court has stated:

"In the absence of fraud or mistake, the power to cancel an insurance policy during the period for which premium has been paid must be founded upon a term of the policy. The policy may empower the insured or the insurer to cancel the policy and may specify the method of cancellation. 3 *Richards on Insurance*; p. 1366.9, § 414. In order for a cancellation to be operative, the method of cancellation provided in the policy must be strictly complied with." [Citations omitted.] *Beach Treat, Inc. v. New York Underwriters Insurance Company*, 301 A.2d 298, 300 (Del.Super.1972).

■ Regardless of whether we accept Kemper's characterization of the removal of the coverage of the Corvette from the DiSandro policy as a "deletion of coverage" or consider it as a cancellation of the policy, there is no merit in Kemper's contention that it need not have complied with the cancellation provisions of the policy.

General Laws 1956 (1979 Reenactment) § 27–9–41 provides that the commissioner of insurance may promulgate reasonable rules and regulations. Section 27–8–11 specifically authorizes the commissioner to promulgate regulations concerning the cancellation and the renewal of liability and property-damage insurance for private passenger automobiles. Pursuant to this statutory authority, the commissioner issued Regulation XVI, entitled "Automobile Insurance Policies; Cancellation and Renewal Provision," effective May 1, 1969.[5] The

---

5. The trial justice in his decision made reference to the insurance commissioner's regulations but, for some unexplained reason, felt that he could not take judicial notice of them.

regulation decrees that "in all policies issued on and after April 1, 1969 the following limitations shall apply to the rights of [c]ancellation regardless of the heretofore provision of a company's policy." The portions of the regulation pertinent to our discussion here read as follows:

"Section 3.

(A) The provisions of subsection two shall apply to each and every coverage or limit afforded under the policy but the insurer, at its option and in lieu of outright cancellation, may reduce the limits afforded for automobile bodily injury liability and property damage liability (subject to compliance with the minimum financial security requirements) or cancel any other coverage, by mailing to the insured at the address shown in the policy written notice stating the specific reason or reasons relied upon by it for its action and when, not less than thirty days thereafter, such cancellation or reduction of limits shall be effective.

(B) No insurer shall exercise its right to cancel a policy unless a written notice of cancellation is mailed or delivered to the named insured, at the address shown in the policy, at least thirty days prior to the effective date of cancellation, except that when cancellation is for non-payment of premium such notice shall be mailed or delivered to the named insured at the address in the policy at least 10 days prior to the effective date of cancellation and shall include or be accompanied by a statement of the reason therefor. This section shall not apply to the failure to renew a policy.

" * * *

"Section 6.

* * * * * *

(B) Proof of mailing of a notice of cancellation, reduction of limits, elimination of coverages or of intention not to renew or proof of the mailing of the reasons therefor, to the named insured at the address shown in the policy, shall be sufficient proof of the giving of notice and the giving of reasons required by this Regulation."

Thus, it is clear that, under the regulation, in order for Kemper's cancellation of coverage of Synon and the Corvette to have been effective, Kemper was required to have given written notice to that effect to DiSandro, the named insured on the policy, within thirty days of the effective date of the cancellation. This it did not do. In view of Kemper's failure to comply with this notice procedure, we must conclude that there had been no effective cancellation of coverage under the policy at the time of the accident.

The second argument advanced by Kemper is that its June 22, 1977 letter to the Laren Agency was legally sufficient notice to effectuate a cancellation of coverage of Synon and the Corvette under the policy. In support of this argument, Kemper asserts that the "continuity of dealings" between the Laren Agency and DiSandro authorized Laren, as agent of DiSandro, to accept Kemper's notice of cancellation of coverage.

█ Generally, an agent hired to procure specific insurance for an insured has no implied authority to receive notice of cancellation of the policy. *Cat 'N Fiddle, Inc. v. Century Insurance Co.,* 213 So.2d 701, 704 (Fla.1968); 8B Appleman, *Insurance Law and Practice* § 5014 at 453 (1981).

█ As one commentator has observed:

"Notice given to a broker authorized to procure insurance is to be considered notice to the insured as to any matters preceding the completion of the contract. But ordinarily the authority of the broker to represent the insured ends with the completion of the contract, and any notice thereafter given to the broker will

We have, however, on a previous occasion taken judicial notice of Regulation XVI. *See Trot-ta v. Pono,* 116 R.I. 702, 706, 360 A.2d 552, 555 (1976).

not affect the rights of the insured. This question most frequently arises when the insurer gives to the broker who procured the insurance notice of the cancellation of the contract, which by the terms of the policy is required to be given to the insured. But in accordance with the principle stated above such notice is not sufficient, unless there is evidence of continued authority conferred upon the broker." (Footnotes omitted.) *Vance's Handbook on the Law of Insurance* § 78 at 444–45 (3d ed. Anderson 1951).

■ However, when it is shown that an insurance agent is employed by an insured to "keep the property insured" and, through the course of dealings, regularly accepts cancellation notices and secures new coverage without notifying the insured, the agent is deemed to be authorized to accept a notice of cancellation. *See Farrar v. Mayabb*, 326 S.W.2d 337, 341–42 (Mo.App. 1959); 8B Appleman, *Insurance Law and Practice* § 5014 at 452. For example, in *Nelson v. American Reliable Insurance Co.*, 286 Minn. 21, 174 N.W.2d 126 (1970), an insurance agent was found to have the proper authority in a situation in which a ten-year relationship had existed between the agent and the insured in regard to coverage for the insured's grocery store. During that time, the agent had accepted cancellation notices and secured new policies on several occasions without consulting the insured; furthermore, in *Nelson* the agent paid the policy premiums to the insurance companies and allowed the insured to make monthly payments to the agent.

The facts in the present case, however, differ substantially from those in *Nelson.* Here the agent, the Laren Agency, was hired by the insured, DiSandro, to procure the initial policy of insurance. The record indicates that, later, the insured requested the agent to add another vehicle and a driver and to change the name of the insured on the policy.[6]

When an insurer has failed to give personal notice to the insured but nevertheless seeks to establish cancellation of the policy on the theory that it effected notice to the insured's agent, it is incumbent upon the insurer to demonstrate that the scope of the agent's authority included the authority to perform the act sought to be charged to the agent's principal. *Cat 'N Fiddle, Inc. v. Century Insurance Co.*, 213 So.2d at 704. Moreover, the determination of whether the agent had authority to accept notice of cancellation is a question of fact. *Id.* at 707; 8B Appleman, *Insurance Law And Practice* § 5014 at 454.

■ Here, the trial justice held that a notice of cancellation of coverage under a policy of insurance by an insurer to a broker or agent binds the insured only if that broker or agent acts as a general agent for the insured on a continuing basis, constantly procuring and terminating policies for the insured; however, the trial justice specifically found that no such relationship existed between the Laren Agency and DiSandro in the instant case and, thus, that the agency had no implied authority to accept the notice of cancellation from Kemper. We cannot say that the trial justice was clearly wrong in this determination.

■ Kemper's third argument is that Vera DiSandro acquiesced in the deletion of the coverage of the Corvette under her policy by accepting the premium rebate from Kemper. Kemper, in its brief, however, has cited no authority to support this proposition. We find no merit in Kemper's contention.

■ It is well settled that an insurance company cannot cancel a policy and an insured cannot ratify a defective cancellation after loss has occurred and liability has attached. *Insurance Co. of North America v. United States*, 159 F.2d 699, 701 (4th Cir. 1947); *Spann v. Commercial Standard Ins. Co. of Dallas, Texas*, 82 F.2d 593, 599 (8th Cir. 1936); *Margolin v. Public Mutual Fire*

---

6. Kemper in its brief refers to a deposition of an employee of the Laren Agency, Claudia Tenori, to support its contention that there were extensive dealings between the Laren Agency and DiSandro. However, that deposition was not made a part of the record on appeal.

Insurance Co., 4 Ill.App.3d 661, 281 N.E.2d 728 (1972). The accepted role is as follows:

"[I]t is the general rule that an injured person's rights cannot be defeated by a cancellation or settlement after an accident has occurred. And since a policy cannot be cancelled after an accident, neither can a prior unauthorized or defective cancellation be ratified after an accident, so as to cut off the rights of the injured person." (Footnote omitted.) 8B Appleman, *Insurance Law and Practice* § 5020 at 515–18.

In *Margolin v. Public Mutual Fire Insurance Co.*, the insurance company advanced an argument similar to Kemper's that the insured had waived her right to proper notice of cancellation by accepting a premium rebate after the loss had occurred. The court held that when the insured received the rebate after her rights had accrued under the policy, by reason of the loss, her conduct would not be considered a waiver of her right to proper notice.

■ In the instant case, the trial justice specifically found that "defendant failed to comply with the notice provision in the policy and as there were no other manifestations of mutual assent or a meeting of the minds, there was no effective cancellation or deletion of coverage" under the DiSandro policy. On the basis of the record before us, we find no error in that determination.

Finally, Kemper argues that Synon's acceptance of the policy of insurance under the Rhode Island Plan canceled coverage of the Corvette under the DiSandro policy. Kemper contends that the parties in this case intended that when coverage was obtained through the Rhode Island Plan, that coverage for Synon and the Corvette under the DiSandro policy would cease. The trial justice, however, specifically rejected this contention in his decision because there had been no mutual assent on the part of both the insurer and the insured that the issuance of Synon's policy would effect a cancellation of coverage under the DiSandro policy. The trial justice also rejected this argument for the reason that

two different named insured appeared on the two policies.

■ Indeed, it is clear that the substitution of a second policy of insurance can work a cancellation of an original policy. *See Nelson v. American Reliable Insurance Co.*, 286 Minn. at 27, 174 N.W.2d at 130. However, as the trial justice correctly stated in his decision, in order for cancellation by substitution of policies to be effective, it must be based upon the mutual assent of both the insurer and the insured, and cancellation by substitution may not be unilaterally effected unless the policy so provides. *Northern Insurance Co. of New York v. Mabry*, 4 Ariz.App. 217, 219, 419 P.2d 347, 349 (1966); *Tyner v. Cherokee Insurance Co.*, 262 S.C. 462, 205 S.E.2d 380, 381 (1974). Here, there is nothing in the record to indicate that there was such a meeting of the minds. Moreover, the first policy listed Vera DiSandro as the named insured and provided $100,000 in bodily-injury coverage; the second policy listed Synon as the named insured and provided only $25,000 in such coverage. These policies are so different that one cannot reasonably be considered a substitute for the other. Thus, we can see no error in the trial justice's ruling that coverage of the Corvette under the DiSandro policy was not canceled by the issuance of the Synon policy.

■ All the arguments raised by Kemper in this appeal challenge, to a certain degree, the findings of fact made by the trial justice. Under our well-settled rule, when the parties have submitted their case to a trial justice sitting without a jury, the findings of fact of the trial justice are entitled to great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice overlooked or misconceived material evidence. *Citizens for Preservation of Waterman Lake v. Davis*, R.I., 420 A.2d 53, 59 (1980); *Freeman v. Danal Jewelry Co.*, R.I., 397 A.2d 1323, 1323 (1979); *Gaglione v. Cardi*, R.I., 388 A.2d 361, 364 (1978); *Raheb v. Lemenski*, 115 R.I. 576, 579, 350 A.2d 397, 399 (1976).

We have carefully reviewed the record and find that the trial justice was not clearly wrong in finding that the DiSandro policy was in effect on July 24, 1977. In so finding, he neither overlooked nor misconceived material evidence.

Kemper's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.