## EMPLOYERS MUTUAL CASUALTY COMPANY

v.

## Paul G. MARTIN et al.

### No. 94–508–Appeal.

Supreme Court of Rhode Island.

March 6, 1996.

---

Joel K. Gerstenblatt, Providence, for Plaintiff.

Ronald J. Resmini, Barrington, Paul S. Cantor, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a question of law certified to us by the Superior Court pursuant to G.L.1956 (1985 Reenactment) § 9–24–25 and Rule 72 of the Superior Court Rules of Civil Procedure. At issue is whether the plaintiff, Employers Mutual Casualty Company (Employers), is liable to the defendants, Paul G. and Doreen A. Martin (Martins), for damages resulting from an automobile accident. The question certified to this Court is as follows:

"Whether the defendants, Paul G. Martin and Doreen A. Martin, are entitled to receive uninsured motorist benefits from the plaintiff, Employers Mutual Casualty Company, under the circumstances set forth in the Agreed Statement of Facts previously filed with the Superior Court by the parties to this law action."

It is the conclusion of this Court that the Martins are entitled to receive uninsured-motorist benefits under an Employers automobile insurance policy. Therefore, we answer the certified question in the affirmative.

## Facts and Procedural History

On or about April 6, 1989, the Martins submitted an application to Employers, through the Chester Insurance Agency (Chester), for a personal automobile insurance policy. Employers issued a policy, effective April 24, 1989, that provided automobile insurance coverage to the Martins for their two automobiles, a 1987 Audi 5000 S and a 1988 Honda Accord LX (Honda), and that included bodily-injury coverage in the amount of $300,000 per accident, involving an uninsured/underinsured-motorist.

In May 1989, Employers received a motor vehicle report of the Martins' driving records, and on the basis of the information contained therein, informed Chester on May 12, 1989, that it intended to cancel the Martins' insurance policy and requested that Chester return for cancellation the policy previously issued to the Martins. Chester in turn informed the Martins that the Employers insurance policy would be canceled and that the Martins' coverage would be placed with another insurance carrier.

On or about May 24, 1989, the Martins applied for automobile insurance from the Rhode Island Auto Insurance Plan through the Atwood Insurance Agency, Ltd. The Metropolitan Property and Liability Insurance Company (Metropolitan) issued to the Martins a personal automobile policy, effective May 25, 1989, covering the same two automobiles as the Employers policy and providing uninsured/underinsured-motorist

bodily-injury coverage in the amount of $100,000 per person with a limit of $300,000 per accident.

On or about June 7, 1989, Employers notified the Martins by certified mail that the Employers policy would be canceled as of July 10, 1989, at 12:01 a.m. On or about June 14, 1989, pursuant to the terms of the cancellation notice, Chester sent the Martins a bill representing the earned premium for the Employers policy from the date of issuance, April 24, 1989, through the stated expiration date, July 10, 1989.

On July 9, 1989, Paul G. Martin (Martin) was operating the Honda when that vehicle was involved in a collision with an uninsured motor vehicle, owned and operated by Andrew S. Znosko. Martin suffered serious bodily injuries as a result of the accident, and the Martins' five-year-old son, Paul G. Martin, Jr., who was riding as a passenger in his father's car when the collision occurred, sustained bodily injuries that resulted in his death.

As a consequence of the tragic accident of July 9, 1989, the Martins filed claims against Metropolitan for uninsured-motorist benefits, and Metropolitan paid $100,000 in respect to the death of Paul G. Martin, Jr., and $100,000 in respect to the injuries of his father. The Martins also filed a claim against Employers for uninsured-motorist benefits for the wrongful death and the loss of society and companionship of their minor son, and Martin filed a claim for uninsured-motorist benefits for the bodily injuries suffered by him in the accident.

On October 15, 1989, the Martins filed a demand for arbitration under the uninsured-motorist provisions of the Employers policy, asserting that said policy provided coverage for the damages resulting from the July 9, 1989 accident. Employers denied the Martins' demand for arbitration, asserting that as a result of the factual circumstances of the case, the Employers policy was not in effect at the time of the accident.

On December 14, 1989, Employers instituted the instant action in the Superior Court, seeking declaratory relief in regard to whether the Employers policy was in effect at the time of the July 9, 1989 accident.

Following completion of discovery and discussions between counsel, an agreed statement of facts was filed with the Superior Court on August 5, 1994. On August 19, 1994, Employers' motion for an order certifying the matter to this Court was granted, and the certified question was filed with this Court on August 31, 1994.

### Analysis

■ Employers argued that its policy did not provide coverage for the Martins' claims for uninsured-motorist benefits for damages resulting from the July 9, 1989 accident because that policy terminated automatically on May 25, 1989, when the Martins secured "similar insurance" from Metropolitan. In support of its position, Employers cited *Capuano v. Kemper Insurance Companies*, 433 A.2d 949, 956 (R.I.1981), in which this Court recognized that "the substitution of a second policy of insurance can work a cancellation of an original policy." This Court went on to hold, however, that such a substitution did not occur in *Capuano* because "in order for cancellation by substitution of policies to be effective, it must be based upon the mutual assent of both the insurer and the insured," which was not the case in *Capuano*. *Id.* The Court further held that the policies had to be sufficiently similar in order that one policy could reasonably be considered a substitute for the other. *Id.*

In the case before us, Employers correctly asserted that its policy specifically provided that "any similar insurance" provided by its policy would terminate if the insured obtained other insurance on the covered automobile. The pertinent part of that policy's automatic-termination provision reads as follows:

"If you obtain other insurance on 'your covered auto,' any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance."

Employers further contended that its policy and that of Metropolitan constituted the type of "similar insurance" referred to in the automatic-termination provision. We disagree.

In *Capuano,* Kemper Insurance Companies (Kemper) had issued, through the Laren Agency (Laren), an automobile insurance policy, effective June 8, 1974, with Lumbermen's Mutual Casualty Company, to one Vincent DiSandro (DiSandro). The policy covered a 1969 Oldsmobile and provided for $100,000 in bodily-injury coverage. On October 22, 1974, an endorsement was issued adding the insured's grandson, Kevin Synon (Synon), to the policy as an additional driver. On June 10, 1977, another endorsement added a 1969 Corvette, as a second insured vehicle under the policy, with Vera DiSandro [1] listed as the registered owner of the Corvette. On June 22, 1977, Kemper advised Laren that unless Synon and the Corvette were eliminated from the policy, the policy would not be renewed. On July 20, 1977, Synon applied for insurance under the Rhode Island Automobile Insurance Plan, and on that same day, an insurance binder was issued to Synon for bodily-injury coverage in the amount of $25,000 on the Corvette. On July 24, 1977, the Corvette was involved in a fatal accident, resulting in the deaths of Synon and John Capuano (Capuano). *Capuano,* 433 A.2d at 952.

This Court held that both policies covered the Corvette and Capuano, the driver at the time of the accident. The Court reasoned that because the first policy listed DiSandro as the named insured and provided $100,000 in bodily-injury coverage and the second policy listed Synon as the named insured and provided only $25,000 in such coverage, the two policies were sufficiently different that the $25,000 policy could not reasonably be considered a substitute for the one that provided $100,000 coverage. *Id.* at 956.

In the instant case, the Employers policy provided uninsured/underinsured-motorist bodily-injury coverage in the amount of $300,000 per accident, whereas the Metropolitan policy provided such coverage in the amount of $100,000 per person with a $300,00 limit per accident.[2] Thus the total amount

recoverable by the Martins for damages resulting from the July 9, 1989 accident was $200,000 under the Metropolitan policy as compared to $300,000 under the Employers policy. We are persuaded that this disparity in coverage is sufficient to preclude the interpretation that the two policies represent similar insurance under *Capuano.* Therefore, we hold that the Metropolitan policy did not provide insurance sufficiently similar to effectuate a cancellation of the Employers policy. Consequently, we need not reach the question of whether the mutual-assent requirement set forth in *Capuano* was satisfied in the instant case.

■ The Employers policy permitted the insurer to cancel the policy during the policy period by mailing to the named insured a notice of cancellation at least ten days before the date of termination in the event that cancellation was a result of nonpayment of premium, and at least thirty days prior to the date of termination in all other cases. In the case before us, Employers complied with the policy's cancellation provision by mailing a notice of cancellation to the Martins thirty days before the stated expiration date of July 10, 1989. In fact, our careful review of the record disclosed a variety of correspondence to the Martins that led us to conclude that the Employers policy terminated on July 10, 1989. First, a Notice of Cancellation, Reduction of Limits, Nonrenewal or Conditioned Renewal, dated and sent to the Martins by certified mail on June 7, 1989, stated explicitly that "cancellation will take effect" on July 10, 1989. A second notice, issued on June 8, 1989, twice stated that the cancellation would be effective as of July 10, 1989. Also, a letter dated June 14, 1989, from Chester to the Martins, explained a bill for the earned premium on the Employers policy and stated that the Employers coverage "will be in force till 7/10/89." In addition, the bill for the earned premium on the Employers policy listed an expiration date of July 10, 1989. Thus, all these documents stated unambigu-

---

1. "Upon the death of Vincent DiSandro, the name of the insured was changed to Vera DiSandro, his wife." *Capuano v. Kemper Insurance Companies,* 433 A.2d 949, 952 n. 3 (R.I.1981).

2. The Employers policy, specifically the Declarations Sheet and "Part C–Uninsured Motorist Coverage" indicated that the policy provided uninsured-bodily-injury coverage at a maximum limit of liability of $300,000 per accident.

ously that the Employers policy would terminate on July 10, 1989, and we hold that Employers is bound by the July 10, 1989 expiration date.

Therefore, the Martins are entitled to collect uninsured-motorist benefits under the policy issued by Employers for damages resulting from the July 9, 1989 accident.

## Certified Questions

Before concluding, we take this opportunity to reiterate this Court's earlier caveats in respect to certified questions. Section 9–24–27 provides:

> "Whenever in any proceedings * * * in the superior court or in any district court, any question of law shall arise * * * which in the opinion of the court * * * is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined."

It is well settled that under § 9–24–27 questions should not be certified "without careful consideration being given as to whether they were really as perplexing as they might at first seem." *Richardson v. Bevilacqua*, 115 R.I. 49, 52, 340 A.2d 118, 120 (1975) (citing *Jerome v. Pratt*, 111 R.I. 56, 298 A.2d 806 (1973)). This Court has emphasized that "[t]hat kind of careful consideration is a precondition to certification under the statute, but, even then, a trial justice should not certify unless, after first having had the benefit of adequate research by counsel and informed arguments, he [or she] continues to entertain such doubts concerning the question that he [or she] feels unable to resolve it satisfactorily." *Id.* This Court has consistently refused "to encourage short-circuiting of proper trial procedure by entertaining improperly certified questions" in circumstances in which certification was "motivated primarily by the desire of the parties to reach promptly a final decision by this court." *Id.* at 53, 340 A.2d at 120.

The instant case is before us on a question of law certified by the Superior Court after the parties filed an agreed statement of facts, pursuant to § 9–24–25 and Rule 72 of the Superior Court Rules of Civil Procedure. Section 9–24–25 provides that:

> "Whenever any civil action, legal or equitable in character, is pending in a district court or in a superior court, and the parties shall file in the clerk's office an agreed statement of facts in such action, the court shall certify the action to the supreme court to be there heard and determined. After having decided the action, the supreme court shall send back the papers therein, with its decision certified thereon, to the court from which the action was certified, which shall enter final judgment upon the decision."

This Court fully recognizes that under § 9–24–25, when the parties in an action have filed an agreed statement of facts, the District or Superior Court is required to certify the question to the Supreme Court. Nevertheless, we express our alarm at the use of certified questions as a means of short-circuiting the proper procedure for resolving matters in controversy. We are of the opinion that the question in the instant case is not so obscure or enigmatic as to preclude its successful resolution by the trial justice. We especially underscore that when the parties bypass the appropriate proceedings in the Superior Court in order to precipitate the holding of this Court, we are deprived of the considerable benefit of a more complete record and of the trial justice's decision and its rationale prior to review by this Court.

In conclusion, we answer the certified question in the affirmative and return the papers in the case to the Superior Court.