Joyce WAGENMAKER, Plaintiff,

v.

AMICA MUTUAL INSURANCE CO.,
Defendant/Third-party Plaintiff,

v.

Vito Vitone, Third-party Defendant.

Safeco Insurance Co. of
Illinois, Plaintiff,

v.

Amica Mutual Insurance Co.,
and Joyce Wagenmaker,
Defendants.

C.A. Nos. 08–041 S, 08–145 S.

United States District Court,
D. Rhode Island.

March 3, 2009.

David Jesse Oliveira, David Oliveira, Esq., Providence, RI, for Joyce Wagenmaker.

Mark P. Dolan, James S. D'Ambra, Rice Dolan & Kershaw, Providence, RI, for Safeco Insurance Co. of Illinois.

John A. Donovan, III, Nicole J. Todesco, Sloane & Walsh LLP, Boston, MA, for Amica Mutual Insurance Co.

Nicholas R. Mancini, Todd White, Adler Pollock & Sheehan PC, Providence, RI, for Vito Vitone.

## *DECISION AND ORDER*

WILLIAM E. SMITH, District Judge.

These two companion actions are before the Court on cross-motions for summary judgment. The movants seek a determination as to whether an automobile insurance policy issued by Amica Mutual Insurance Co. to the Third-party Defendant, Vito Vitone, contains uninsured motorist coverage for Vitone's 1998 Chevrolet Corvette.

Because material facts are still in dispute as to whether Vitone authorized Amica to cancel his uninsured motorist coverage for the Corvette, summary judgment on this question is not appropriate and must be denied. It is also evident to the Court that the requirement for complete diversity between the parties at the time of filing was not satisfied in the *Safeco v. Amica & Wagenmaker* action. Accordingly, that action will be dismissed for a lack of subject matter jurisdiction.

### I. Background and Undisputed Facts

In the first case, Plaintiff Joyce Wagenmaker seeks to recover insurance benefits from Defendant, Amica Mutual Insurance Co. ("Amica") on the theory that she is a beneficiary on Vitone's uninsured motorist policy.[1] In response, Amica counterclaimed and instituted a third-party complaint for declaratory judgment against Vitone.[2]

The second case is brought by Wagenmaker's insurance company, Safeco Insur-

---

[1]. Wagenmaker's complaint alleges four causes of action. Her first two causes of action are for declaratory relief and breach of contract. Her remaining claims allege statu-

tory and common law bad faith insurance practice claims against Amica.

[2]. Vitone then counter-claimed against Amica asserting three causes of action: Count I—

ance Co. of Illinois ("Safeco"). Safeco seeks its own declaratory judgment that Amica is solely liable to Wagenmaker and that an exclusion in her policy prevents recovery.[3]

This litigation sparks from an ordinary car accident and the subsequent denial of insurance benefits. On July 3, 2006, Wagenmaker and Vitone were injured when an unidentified vehicle collided with Vitone's Corvette. After the accident, Arnica denied the claims filed by Wagenmaker and Vitone stating that the Corvette was not covered by uninsured motorist insurance at the time of the accident.

Prior to the accident, in October 2005, Vitone had contacted Arnica to revise the insurance coverages on several of his vehicles. During the telephone conversation, Vitone instructed Arnica to delete the general liability and comprehensive collision coverage for his Corvette and replace those coverages with "other than collision loss" coverage. Vitone requested these changes because he was taking the Corvette off the road for the winter. In addition to deleting those coverages, the Arnica account representative also deleted the Corvette's uninsured motorist coverage.[4]

On October 13, 2005, Amica mailed a written confirmation to Vitone summarizing all of the changes made to his policy, including the elimination the Corvette's uninsured motorist coverage. The letter instructed Vitone to contact Amica before putting the Corvette back on the road. An amended declarations page continued to list the Corvette, but indicated "NOT COVERED" for uninsured motorist coverage.[5] Vitone acknowledges receiving this

Breach of Contract, Count II—Negligence, Count III—Bad Faith Insurance Practice (R.I. Gen. Law § 9–1–33).

**3.** In pertinent part, the provision of Wagenmaker's policy on which Safeco relies states:

**Other Insurance**

A. For Uninsured Motorist Coverage only:

If there is other applicable similar insurance available under more than one policy or provision of coverage:

1. Any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

**4.** It is unclear whether the Corvette's uninsured motorist coverage was automatically deleted when Vitone canceled the Corvette's general liability coverage. It is also unclear whether Amica even offers uninsured motorist coverage for vehicles that are not also insured by a general liability policy. For purposes of deciding this motion, the Court assumes that Amica would have allowed Vitone to maintain uninsured motorist coverage on his Corvette even though he canceled its liability coverage.

**5.** The Court has reproduced, in pertinent part, an accurate depiction of the amended declarations page below.

notice but contends he did not fully comprehend it and did not realize Arnica had deleted the Corvette's uninsured motorist coverage.

After changing his policy, Vitone continued to pay the same premium for uninsured motorist coverage because Arnica charges a flat rate for uninsured motorist insurance that covers more than one vehicle. Because Vitone owned and insured four other vehicles, deleting uninsured motorist coverage on the Corvette did not save him any money.

Part C of Vitone's policy contains the uninsured motorist provisions and states:

A. [Amica] will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. Sustained by an **insured;** and

2. Caused by an accident.

\* \* \*

B. "Insured" as used in this Part means:

1. You or any **family member**

2. Any other person **occupying your covered auto**

\* \* \*

The general definition section of the policy states:

J. **"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

\* \* \*

(emphasis in original).

This language seemingly conflicts with the amended declarations page of Vitone's policy because the Corvette is shown in the declarations, suggesting that it is a "covered auto," but the chart indicates the Corvette is "NOT COVERED" with respect to uninsured motorist insurance.

## II. Disputed Facts

There is one disputed fact that is central to this case: whether Vitone authorized the cancellation of his Corvette's uninsured motorist coverage. In a supporting affidavit, Vitone maintains that he never authorized Amica to cancel the uninsured motorist coverage for the Corvette. Ami-

| Coverage is provided where a limit of liability is shown for the coverage | | | |
|---|---|---|---|
| Coverages | Limits of Liability | | |
| | AUTO 4 1999 JEEP | AUTO 5 1998 CHEV | AUTO 6 2005 HYUN |
| A. LIABILITY each accident | $500,000 | NOT COVERED | $500,000 |
| B. MEDICAL PAYMENTS each person | $ 5,000 | NOT COVERED | $ 5,000 |
| C. UNINSURED MOTORISTS each accident | * | NOT COVERED | * |
| D. DAMAGE TO YOUR AUTO (ACV means Actual Cash Value)<br><br>1. Collision loss<br> ACV minus deductible of | NOT COVERED | NOT COVERED | $ 500 |
| 2. Other than Collision loss<br> ACV minus deductible of | $ 500 | $ 500 | $ 500 |
| TOWING AND LABOR COSTS each disablement | $ 100 | $ 100 | $ 100 |
| *UNINSURED MOTORISTS - BODILY INJURY POLICY LIMIT $500,000 EACH ACCIDENT UNINSURED MOTORISTS - PROPERTY DAMAGE SUBJECT TO A $200 DEDUCTIBLE $25,000 EACH ACCIDENT· COVERED | | NOT COVERED | NOT COVERED |

ca disagrees and offers the affidavit of the account representative who assisted Vitone. In her affidavit, she states that Vitone requested that *all* coverages except for "other than collision" for the Corvette be deleted.

### III. Summary Judgment Standard

Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[C]ross-motions for summary judgment neither dilutes nor distorts this standard of review." *Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3d 727, 732 (1st Cir.2007) (quoting *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir.2006)). All facts, and reasonable inferences therefrom, are reviewed in the light most favorable to the respective non-moving parties. *Teragram Corp. v. Marketwatch.com, Inc.*, 444 F.3d 1, 8 (1st Cir. 2006); *Medeiros v. Vincent*, 431 F.3d 25, 29 (1st Cir.2005). Cross motions simply require the Court to determine if either party deserves judgment as a matter of law on the undisputed facts. *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007).

### IV. Analysis

#### A. *Wagenmaker v. Arnica et al.*

 This dispute turns on whether Vitone's policy provides uninsured motorist coverage for his Corvette. Ordinarily, whether coverage exists depends upon the plain language of the policy in question. *Textron, Inc. v. Liberty Mut. Ins. Co.*, 639 A.2d 1358, 1362 (R.I.1994). All provisions of a policy are read together and construed according to their plain meaning, while at the same time giving effect to all provisions. *Aetna Cas. & Sur. Co. v. Sullivan*, 633 A.2d 684, 686 (R.I.1993). If a policy is

ambiguous, that is susceptible to more than one reasonable interpretation, the general rule is that the policy must be strictly construed in favor of the insured and against the insurer. *Employers Mut. Cas. Co. v. Pires*, 723 A.2d 295, 298 (R.I. 1999). *But see* 11 Williston on Contracts § 32:12 (4th ed. 1999) ("The rule of *contra proferentem* is . . . a rule of last resort and is applied only where other secondary rules of interpretation have failed to elucidate the contract's meaning."). This rule, however, does not preclude a court from first attempting to resolve the ambiguity through the aid of extrinsic evidence. *Merrimack Mut. Fire Ins. Co. v. Dufault*, 958 A.2d 620, 624–25 (R.I.2008); *see also* 2 Couch on Insurance 3d § 21:15. If after examining a policy in its entirety the Court determines the policy is ambiguous, it may resort to extrinsic evidence to aid in construing the policy to ascertain the parties' intent. *See Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I.2009) (stating intent is irrelevant only when contract language is unambiguous); *see also Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1034 (R.I.2005) (only when a trial judge is confronted with an ambiguity on the face of a writing may he or she allow parol or extrinsic evidence); *Lisi v. Marra*, 424 A.2d 1052, 1055 (R.I.1981) (stating that parol evidence may be admitted to supplement an agreement that is ambiguous on its face).

 In this case, the Court finds an ambiguity when it attempts to read the phrase "NOT COVERED" on the declarations page in conjunction with the plain language of the uninsured motorist endorsement and the definition of "your covered auto." While an isolated reading of the uninsured motorist endorsement would support the conclusion that coverage in this case exists, such a reading would ignore the "NOT COVERED" language on

the declarations page. In the Court's view, a reasonably prudent person viewing this policy fairly would be unable to reconcile these two conflicting provisions. *See Pressman v. Aetna Cas. & Sur. Co.*, 574 A.2d 757, 760 (R.I.1990) (stating the test for ambiguity is from the point of view of the ordinary reader and purchaser).

■ An obvious piece of extrinsic evidence that would assist the Court in resolving this ambiguity is whether Vitone did in fact authorize Amica to cancel his Corvette's uninsured motorist coverage. *See Capuano v. Kemper Ins. Cos.*, 433 A.2d 949, 953, 956 (R.I.1981) (holding that an insurance company may not unilaterally cancel or modify a person's insurance unless specifically authorized by either a provision of the policy or an alternative source of authority, and that a cancellation by substitution is only effective when premised on mutual consent). There is a fundamental dispute here as to whether the required meeting of the minds between Vitone and Amica occurred regarding the cancellation of the Corvette's uninsured motorist coverage. Vitone and Amica have submitted diametrically opposed affidavits on this point. Because this factual issue may well determine the outcome of this case, summary judgment is clearly not appropriate. *See Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir.2006) (quoting *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218–19 (1st Cir.2004)) ("a 'material fact' is one which 'might affect the outcome of the suit under the governing law' ").

■ Both Vitone and Amica present arguments as to why this difference is not material and should not prevent summary judgment. Amica argues that Vitone's authorization is irrelevant to the analysis because Amica mailed him a written cancellation notice. Relying on the Rhode Island Insurance Regulations, Amica boldly contends that even if it sent the cancellation notice without Vitone's authorization (or even in error) the notice became binding when he did not take steps correct the perceived mistakes.[6] Amica's reading of the regulation, however, asks too much. The Rhode Island Supreme Court, interpreting this regulation, has made clear that proof of mailing a cancellation notice only constitutes sufficient proof of notice. *See Sparling v. Bizier*, 778 A.2d 808, 810 (R.I.2001) (concluding that proof of mailing a notice of cancellation is only proof that notice was given). While a cancellation notice is effective once mailed, *id.*, the regulation does not change the requirement that an insurance company must first have the right to cancel an insured's coverage before it may do so. *See Capuano*, 433 A.2d at 953.

■ Amica has not offered any compelling authority to support the argument that a notice of cancellation or modification to an existing policy sent unilaterally by an insurer to a policy holder becomes effective by the insured's silence. Moreover, silence does not generally constitute acceptance. *Kenney Mfg. Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 208 (R.I. 1994) (citing Restatement (Second) Con-

---

**6.** The portion of the Rhode Island Department of Business Regulation that Amica relies on states:

 B. Proof of mailing of a notice of cancellation, reduction of limits, elimination of coverages or of intention not to renew or proof of the mailing of the reasons therefor, to the named insured at the address shown in the policy, shall be sufficient proof of the giving of notice and the giving of reasons required by this Regulation. A certificate of mailing as certified by the U.S. Postal Service will satisfy the proof of mailing requirement. Insurance Regulation 16, § 11(B) (Jan. 11, 2006) available at http://www.dbr.state.ri.us/documents/rules/insurance/InsuranceRegulation16.pdf.

tracts § 69, comment a at 165 (1981)). Although exceptions to this rule, such as the prior course of dealings between parties, may in certain situations make it reasonable to construe silence as acceptance, *id.*, the evidence before the Court does not support such a conclusion. Amica's arguments for summary judgment therefore fail.

 Vitone argues that even if the Court assumes he did authorize the cancellation of the Corvette's uninsured motorist coverage, the cancellation was ineffective because Amica did not obtain a signed rejection of uninsured motorist coverage from him as required by R.I. Gen. Laws § 27–7–2.1. In making this argument, Vitone draws support from, but ultimately misreads, a Rhode Island Supreme Court decision interpreting § 27–7–2.1. *See Ferreira v. Integon Nat'l Ins. Co.*, 809 A.2d 1098, 1101 (R.I.2002). In *Ferreira*, the court held that a written rejection pursuant to § 27–7–2.1(a) is only required when the policy is initially issued, and not if a policy is being renewed, reinstated, substituted, amended, altered, modified, transferred, or replaced, as contemplated by § 27–7–2.1(d). *Id.* In this case, Vitone was changing an existing policy. Thus, a written rejection was not required and Vitone's argument is without merit.

 Vitone's second argument, equally unavailing as the first, suggests a statutory entitlement to uninsured motorist cov-

erage premised on § 27–7–2.1. Vitone argues that because § 27–7–2.1 applies to "any policy insuring against loss for liability," he is entitled to uninsured motorist coverage because his policy contained liability coverage for his other cars.

 This argument fails for two reasons. First, an exclusion provision in the policy, the "owned but not insured" exclusion, clearly precludes coverage in situations where the owner has not purchased uninsured motorist coverage for the vehicle.[7] Second, Vitone's argument runs contrary to decisions of the Rhode Island Supreme Court that hold uninsured motorist insurance follows a vehicle, not an insured. *See Employers' Fire Ins. Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005, 1008 (1978).[8]

Wagenmaker presents separate theories as to why she is entitled to summary judgment. Her primary argument is premised entirely on a strict reading of Vitone's insurance policy. Essentially, she asks the Court to find coverage based on her view that the plain and unambiguous language of the policy provides coverage. However, this argument is moot in light of the Court's decision that the policy contains an ambiguity and that the Court will consider extrinsic evidence to resolve it.

 Wagenmaker's alternative argument that she is covered even if Vitone canceled his coverage is also a nonstarter.

---

7. In pertinent part, the exclusion provision reads:

 A. We do not provide Uninsured Motorist Coverage for bodily injury sustained:

 1. By an insured while occupying, or when struck by, any motor vehicle owned by that insured which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

 \* \* \*

8. The Court will not accept Vitone's invitation to place itself at odds with the Rhode Island

Supreme Court on this point of law. In diversity cases, a district court is required to apply the controlling state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Norton v. McOsker*, 407 F.3d 501, 506 (1st Cir.2005). Relying on pronouncements of the state supreme court, district courts ascertain the rule the state court would follow under the circumstances, and do not apply independent judgment on the question. *Norton*, 407 F.3d at 506 (citing *Catex Vitol Gas, Inc. v. Wolfe*, 178 F.3d 572, 576 (1st Cir.1999)).

In Rhode Island, uninsured motorist coverage is vehicle specific and not a form of personal protection. *Baker,* 383 A.2d at 1007–09; *Nationwide Mut. Ins. Co. v. Viti,* 850 A.2d 104, 107 (R.I.2004); *see also Carlton v. Worcester Ins. Co.,* 744 F.Supp. 395, 400 (D.R.I.1990). Uninsured motorist coverage follows the vehicle not the insured. *Baker,* 383 A.2d at 1008; *Carlton,* 744 F.Supp. at 400. Thus, if an insured chooses not to insure his vehicle he does so at his peril and unfortunately to the peril of his passengers. *See Baker,* 383 A.2d at 1008–09 (stressing the fact that the insured chose not to insure his motorcycle). To credit Wagenmaker's argument would be contrary to this longstanding Rhode Island precedent.

### B. *Safeco v. Amica and Wagenmaker.*

The Court will not address the motions for summary judgment in Safeco's action as subject matter jurisdiction is lacking. *See In re Olympic Mills Corp.,* 477 F.3d 1, 6 (1st Cir.2007) (noting an obligation to inquire *sua sponte* into subject matter jurisdiction); *Doyle v. Huntress, Inc.,* 419 F.3d 3, 6 (1st Cir.2005); *see also* Fed. R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

As pled, the Court's subject matter jurisdiction over this case sounds in diversity. *See* 28 U.S.C. § 1332. While Safeco's complaint, filed on April 21, 2008, fails to affirmatively state where it is incorporated or where it maintains its principle place of business, at oral argument the Court was informed that Safeco is an Illinois corporation with its principle place of business in that state. It has also been represented that Wagenmaker is presently a citizen of Rhode Island, but prior to June 1, 2008 she had been a citizen of Illinois.[9]

On this information, the requirement for complete diversity was lacking on April 21, 2008 when Safeco filed its complaint because both Safeco and Wagenmaker were citizens of Illinois. *See Strawbridge v. Curtiss,* 7 U.S. 267, 3 Cranch 267, 2 L.Ed. 435 (1806); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP,* 362 F.3d 136, 139 (1st Cir.2004). Citizenship in diversity cases is determined as of the date of commencement of an action. *Connectu LLC v. Zuckerberg,* 522 F.3d 82, 91 (1st Cir.2008); *see also Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (holding that attaining diversity during the pendency of litigation does not save jurisdiction if the parties are not diverse at the outset). Therefore, it is of no consequence that Wagenmaker is now a citizen of Rhode Island and Safeco's complaint must be dismissed.

## V. Conclusion

For the foregoing reasons, the Motions for Summary Judgment filed by Wagenmaker, Arnica, and Vitone are DENIED and the case shall be placed on the April trial calendar; Safeco's Complaint is DISMISSED.

It is so ordered.

---

**9.** After the hearing, the Court received a correspondence from Wagenmaker's counsel, which was copied to all parties and has been incorporated into the record. This letter clarified that "[i]t was not until June 1, 2008 that Ms. Wagenmaker changed her citizenship status from Illinois to Rhode Island."