388 A.2d 809.

THOMAS J. DUNN, JR. *v.* EUGENE P. PETIT, JR., *Registrar.*

DOUGLAS WILBOUR *v.* EUGENE P. PETIT, JR., *Registrar.*

JULY 18, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.  These two certiorari proceedings have been consolidated because they present a single, similar substantive issue: whether a motor vehicle operator believed on reasonable grounds to have been driving under the influence of intoxicating liquor in violation of G.L. 1956 (1968 Reenactment) §31-27-2 has a constitutional right to consult with an attorney before deciding whether to submit to a breathalyzer test requested by a police officer under Rhode Island's implied-consent law, §31-27-2.1. We will refer to the petitioners, Thomas F. Dunn, Jr., and Douglas Wilbour, as Dunn and Wilbour respectively, and to the respondent in both proceedings, the Registrar of Motor Vehicles, as the registrar.

On November 23, 1974, at approximately 1:30 a.m., a Narragansett police officer observed Dunn operating his motor vehicle in an erratic manner on the Boston Post Road in the town of Narragansett. After a chase of about 3 miles, the officer succeeded in stopping the Dunn auto. Based upon his observations, the officer arrested Dunn and notified him that he was suspected of driving a motor vehicle while under the influence of alcohol in violation of §31-27-2. The officer requested that Dunn submit to a breathalyzer test, explained that he had the right to be examined by a physician of his own choice in accordance with §31-27-2.1 and instructed

Dunn that should he refuse to submit to the breathalyzer test, his license would be suspended for 6 months.

Wilbour was involved in a collision on the night of October 19, 1975, when the car he was operating mounted a curb and struck a traffic sign in the town of Woonsocket. A police officer who had witnessed the event responded to the scene of the collision. While helping Wilbour out of his auto, the officer detected a strong odor of alchoholic beverage on Wilbour's breath and apparently had to steady Wilbour to keep him from falling. In much the same manner as described above with relation to Dunn, the arresting officer explained that he had reasonable grounds for believing that Wilbour was driving while under the influence of intoxicating liquor and advised Wilbour of his rights under the implied-consent law. Wilbour was also read the *Miranda* warnings at the scene of the collision.

The events that transpired after the respective arrests were nearly identical. Both arrestees were taken to the appropriate police stations, where they were again notified of their rights as set out in the implied-consent advisory, §31-27-3. Dunn and Wilbour were then each requested to submit to a breathalyzer test and each refused to do so without first consulting with an attorney. After the refusal, they were allowed to make several telephone calls. A report of their refusal to submit to the test was forwarded to the registrar, who suspended their operators' licenses for 6 months based upon §31-27-2.1(a).Dunn and Wilbour requested hearings on their respective suspensions. Hearings were conducted by the Registry of Motor Vehicles, and in each instance the hearing board found that the arresting officer had reasonable grounds for believing that the arrestee was driving under the influence of alcohol at the time of arrest, that the arrestee was fully informed of his rights as required by the implied-consent law and as enumerated in §31-27-3, and that while under arrest the arrestee had refused to submit to a breathalyzer test upon reasonable request by a police officer. In

each case the hearing board affirmed the suspension order of the registrar.

Both petitioners appealed the respective decisions of the hearing board to the Superior Court under G.L. 1956 (1977 Reenactment) §42-35-15. After reviewing the records, the Superior Court affirmed the orders of suspensions as to both Dunn and Wilbour and held that there was no state or federal constitutional right to consult with counsel prior to deciding whether to submit to a breathalyzer test under §31-27-2.1. The petitioners then filed separate petitions for certiorari, urging that article I, section 10 of the Rhode Island Constitution and the sixth amendment of the Federal Constitution, as applicable to the states via the fourteenth amendment, as well as the requirements of due process, guarantee the right to counsel at such a time. The petitioners argue that because they were under arrest and faced with a possible criminal charge for driving under the influence of alcohol, and because the results of the breathalyzer test, if submitted to, could be proffered in evidence at trial for the criminal charges, their decision whether or not to take the test was a constitutionally protected critical stage in a criminal prosecution. We cannot agree that the right to counsel at that moment is imbedded in the rubric of either the Rhode Island or the Federal Constitution.

The arena of implied-consent law is well-litigated. Almost all jurisdictions have some form of implied-consent statute providing that consent to a chemical test, such as a breathalyzer, is a pre-condition to issuance of a valid operator's license. *See* Annot., 88 A.L.R.2d 1064 (1963) and Later Case Service. The thrust of such legislation is to reduce "the carnage occurring on our highways which is attributable to the persons who imbibe alcohol and then drive." *Di Salvo* v. *Williamson*, 106 R.I. 303, 305-06, 259 A.2d 671, 673 (1969).

Under §31-27-2.1, a motor vehicle operator impliedly consents to take a chemical test to determine the alcohol

content of his blood in the event he is arrested on the reasonable belief that he is driving under the influence of alcohol. Should he submit to the test, the results may be introduced as evidence in a subsequent criminal prosecution for driving under the influence of alcohol in violation of §31-27-2. Conviction for driving under the influence is a misdemeanor and may be accompanied by a license suspension as part of the sentence. If the operator refuses to submit to the test, his license is automatically suspended for 6 months and he is afforded an administrative forum under §31-27-2.1 for contesting this civil sanction. Under §31-27-2 evidence of his refusal to submit to the test is, however, rendered inadmissible in any subsequent criminal proceeding under that section for driving under the influence unless the defendant elects to testify.

Thus implied-consent cases involve a possibility of both civil and criminal proceedings whether the arrestee decides to submit to the test or to refuse, and the implications of the arrestee's decision may redound into both civil and criminal proceedings and penalties.

Despite the possibility that civil and criminal results might flow from the refusal to submit to a chemical test under an implied-consent statute, courts have been unanimous in their perception that no constitutional right to counsel adheres at the moment of decision as to whether or not to submit to the test. *People* v. *Sudduth,* 65 Cal. 2d 543, 421 P.2d 401, 55 Cal. Rptr. 393 (1966); *Sweeney* v. *State,* 185 Colo. 116, 522 P.2d 101 (1974); *Davis* v. *Pope,* 128 Ga. App. 791, 197 S.E.2d 861 (1973); *State* v. *Severino,* 56 Hawaii 378, 537 P.2d 1187 (1975); *Mills* v. *Bridges,* 93 Idaho 679, 471 P.2d 66 (1970); *Gottschalk* v. *Sueppel,* 258 Iowa 1173, 140 N.W.2d 866 (1966); *Newman* v. *Hacker,* 530 S.W.2d 376 (Ky. 1975); *Spradling* v. *Deimeke,* 528 S.W.2d 759 (Mo. 1975); *Rusho* v. *Johns,* 186 Neb. 131, 181 N.W.2d 448 (1970); *Harlan* v. *State,* 113 N.H. 194, 308 A.2d 856 (1973); *State* v. *Pandoli,* 109 N.J. Super. 1, 262 A.2d 41 (1970); *Finocchairo* v. *Kelly,*

11 N.Y. 2d 58, 181 N.E.2d 427, 226 N.Y.S.2d 403, *cert. denied,* 370 U.S. 912, 82 S. Ct. 1259, 8 L. Ed. 2d 405 (1962)' *Lund* v. *Hjelle,* 224 N.W.2d 552 (N.D. 1974); *Stratikos* v. *State,* 4 Ore. App. 313, 477 P.2d 237 (1970).

There are two rationales employed by courts in rejecting the constitutional argument. Some courts strictly apply the language of the sixth amendment, which like article I, section 10 of the Rhode Island Constitution provides: "in all *criminal* prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." (Emphasis added.) These courts reason that because proceedings under implied-consent laws, including license revocation or suspension, are civil in nature, the sixth amendment does not apply because it is expressly limited to criminal prosecutions. *E.g., State* v. *Severino,* 56 Hawaii 378, 537 P.2d 1187 (1975); *Mills* v. *Bridges,* 93 Idaho 679, 471 P.2d 66 (1970); *Gottschalk* v. *Sueppel,* 258 Iowa 1173, 140 N.W.2d 866 (1966).

Other courts rest their opinion that there is no constitutional right to counsel under the implied-consent laws on the premise that even if a breathalyzer test were perceived as an evidence-gathering step in a potential criminal prosecution for driving under the influence, and therefore labeled criminal in nature, nevertheless it is not a critical stage in that criminal prosecution, as defined in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). *E.g., Davis* v. *Pope,* 128 Ga. App. 791, 197 S.E.2d 861 (1973); *Newman* v. *Hacker,* 530 S.W.2d 376 (Ky. 1975). In *Wade,* the United States Supreme Court held that a person accused of a crime enjoys a sixth amendment right to the assistance of counsel in critical stages of a criminal prosecution, i.e., in settings where the absence of counsel would jeopardize the accused's right to a fair trial, such as in post-indictment lineups. *United States* v. *Wade,* 388 U.S. at 227-28, 87 S. Ct. at 1932-33, 18 L. Ed. 2d at 1157-58. The *Wade* Court excluded from the ambit of the term "critical stage" such

evidence-gathering steps as the taking of "blood sample[s] * * * and the like." *Id.* at 227, 87 S. Ct. at 1932, 18 L. Ed. 2d at 1158.

This view that no constitutional right to counsel arises at the moment an arrestee is called upon to decide whether to submit to a breathalyzer is bolstered by *Schmerber* v. *California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). In *Schmerber* the Supreme Court, in an implied-consent situation,[1] rejected the right-to-counsel argument, seemingly on the basis that where an arrestee has no right to refuse to take a chemical test, there is no issue as to whether the advice of an attorney would preserve any right of the arrestee. *Id.* at 765-66, 86 S. Ct. at 1833, 16 L. Ed. 2d at 917.

In light of *Wade* and *Schmerber,* we reject petitioners' argument that there is a constitutional right to counsel at the moment of decision concerning submission to a breathalyzer test required by §31-27-2.1. It is not essential in this determination to resolve the semantic problem of whether that decision is part of a civil or a criminal proceeding, because in either instance the result is the same for purposes of the sixth amendment of the Federal Constitution and article I, section 10 of the Rhode Island Constitution.

Petitioners have cited *Prideaux* v. *State,* 310 Minn. 405, 247 N.W.2d 385 (1976), in support of their constitutional argument, but in that case the right to counsel was created by statute. *See also Siegwald* v. *Curry,* 40 Ohio App. 2d 313, 319 N.E.2d 381 (1974); *cf. Pickard* v. *Director of Motor Vehicles,* 184 Neb. 573, 169 N.W.2d 460 (1969); *People* v. *Gursey,* 22 N.Y.2d 224, 239 N.E. 2d 351, 292 N.Y.S.2d 416 (1968); *Hunter* v. *Dorius,* 23 Utah 2d 122, 458 P.2d 877 (1969). The *Prideaux* court constructed a line of reasoning leading toward the conclusion that there was a constitutional

---

[1]There was no implied-consent law involved in *Schmerber,* because the California statute regarding implied consent was enacted after Schmerber's arrest. *See* Cal. Vehicle Code §13353 (West 1971).

right to counsel in implied-consent settings but ultimately refrained from deciding the constitutional issue and instead rested its decision on an attorney-consultation statute. *Prideaux* v. *State*, 310 Minn. at 414, 247 N.W. 2d at 391. There is no such statutory right in Rhode Island. Additionally, we do not believe that the dictum in *Prideaux* concerning the constitutional right to counsel can be squared with our analysis of *Wade* and *Schmerber* and with the great weight of authority which construes those cases as denying the constitutional right to counsel in implied-consent proceedings. *See id.* at n.3, 247 N.W.2d at 388 n.3.

The petitioners also contend that the right to counsel under implied-consent statutes is guaranteed by the due process clause of the fourteenth amendment. As a basis for this argument petitioners suggest that once issued, a license to operate a motor vehicle becomes a "vested personal liberty" entitled to the full panoply of due process protections. Indeed, in *Berberian* v. *Lussier*, 87 R.I. 226, 231, 139 A.2d 869 872 (1958), we recognized that the right to operate a motor vehicle "partakes of the nature of a liberty" of which a person may not be deprived without due process. This does not, however, settle the issue of what process is due in the general context of license revocation and, specifically, at the moment when an arrestee must decide whether to submit to a chemical test.

The United States Supreme Court, in *Bell* v. *Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971), extended procedural due process protections to the license revocation process. The Supreme Court applied *Bell* in *Dixon* v. *Love*, 431 U.S. 105, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977), where it held that a pre-revocation evidentiary hearing is not a requisite to due process. Both *Bell* and *Dixon* were limited, however, to the notice and hearing aspects of procedural due process. Neither case requires the presence of counsel in a situation such as that before us, nor have we found any cases where such a right to counsel has been held to be required by

due process. We therefore reject petitioners' due process argument.

The petitions for certiorari are denied and dismissed, the writs previously issued are quashed, and the records certified to us are ordered returned to the Superior Court with our decision endorsed thereon.

*Nugent & Nugent, J. Joseph Nugent, Sr.* for Thomas J. Dunn, Jr., *William G. Savastano,* for Douglas Wilbour, petitioners.

*F. Thomas O'Halloran,* for respondent.