STATE

v.

Jerome CARCIERI.

No. 98–209–Appeal.

Supreme Court of Rhode Island.

May 18, 1999.

Michael W. Carroll, Providence, William L. Bernstein, Greenville, for Plaintiff.

Richard S. Humphrey, Tiverton, Debra A. Saunders, Barrington, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The case comes before us pursuant to a certified question relative to the interpretation of G.L.1956 § 12–7–20, which provides that an arrestee must be afforded an opportunity to make a confidential telephone call as soon as practical after his arrest. Following a pre-trial conference relative to defendant's motion to dismiss the complaint charging him with driving under the influence (DUI) in violation of G.L.1956 § 31–27–2, a judge of the District Court determined that the questions raised during the hearing were of considerable doubt and importance, and that she was unable to reach a satisfactory conclusion to the questions presented. As a result, an order was issued certifying the following five questions to the Supreme Court:

1. "Is the right to a confidential telephone call provided for in RIGL 12–7–20, violated when a defendant is

deprived of an opportunity to converse privately with an attorney?"

2. "Is the right to a confidential telephone call provided for in RIGL 12–7–20, violated when a police officer is present during the telephone conversation?"

3. "Is the right to a confidential telephone call provided for in RIGL 12–7–20, violated when a police officer does not notify the defendant of his right to a confidential telephone call?"

4. "Is the right to a confidential telephone call provided for in RIGL 12–7–20, violated where the defendant is deprived of an opportunity to converse privately with someone other than an attorney?"

5. "If the right to a confidential telephone call provided for in RIGL 12–7–20 is violated, is the defendant entitled to dismissal of the charge of driving under the influence, RIGL 31–27–2?"

## Facts and Travel

According to the certification order, Jerome Carcieri (Carcieri) was arrested and detained by the Smithfield police on January 8, 1998, for suspicion of DUI in violation of § 31–27–2. Arresting officers provided Carcieri with a one-page statement entitled "Rights For Use At Station" which outlined the official procedures facing a DUI suspect under detention by Smithfield police. The form also included a list of mandatory sanctions that would be imposed "if the charge is sustained." Finally, the form included a phrase which informed the suspect that he "may now use the telephone." The Town of Smithfield asserts that Carcieri was then offered the choice of a pay telephone or a "recorded line," at which time Carcieri made three telephone calls using the pay telephone in an unsuccessful effort to contact an attorney. The trial justice found that during Carcieri's futile attempts to reach an attorney, an officer stood approximately eight

feet away from him. Carcieri subsequently reached a friend using the recorded telephone line, while an officer stood at a distance of approximately five feet.

On February 23, 1998, Carcieri moved to dismiss the case on the grounds that he had been denied the opportunity to make a confidential telephone call in violation of § 12–7–20, and also moved to certify several questions to this Court. The trial justice agreed with Carcieri that the questions warranted certification to this Court and issued an order on April 14, 1998 to that effect.

## Certified Questions

Before addressing the merits of the certified questions, we take this opportunity to reiterate this Court's role when confronted with certified questions. General Laws 1956 § 9–24–27 provides in pertinent part:

"Whenever in any proceedings * * * in the [S]uperior [C]ourt or in any [D]istrict [C]ourt, any question of law shall arise * * * which, in the opinion of the court * * * is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the [S]upreme [C]ourt before further proceedings, the court in which the cause is pending shall certify the question or motion to the [S]upreme [C]ourt for that purpose and stay all further proceedings until the question is heard and determined * * *."

We have repeatedly stated that under § 9–24–27, questions should not be certified "without careful consideration being given as to whether they were really as perplexing as they might at first seem." *Employers Mutual Casualty Co. v. Martin*, 671 A.2d 798, 802 (R.I.1996) (quoting *Richardson v. Bevilacqua*, 115 R.I. 49, 52, 340 A.2d 118, 120 (1975)) (citing *Jerome v. Pratt*, 111 R.I. 56, 298 A.2d 806 (1973)). We have previously adopted the position that "careful consideration [of the issue] is a precondition to certification under the statute, but, even then, a trial justice should not

certify unless, after first having had the benefit of adequate research by counsel and informed arguments, he [or she] continues to entertain such doubts concerning the question that he [or she] feels unable to resolve it satisfactorily." *Richardson,* 115 R.I. at 52, 340 A.2d at 120. Moreover, this Court has consistently declined "to encourage short-circuiting of proper trial procedure by entertaining improperly certified questions" in instances which certification was "motivated primarily by the desire of the parties to reach promptly a final decision by this court." *Id.* at 53, 340 A.2d at 120. It is significant to note that when we are faced with a certified question, unfortunately "we are deprived of the considerable benefit of a more complete record and of the trial justice's decision and its rationale prior to review by this Court." *Martin,* 671 A.2d at 802. Based upon this logic, we clearly disapprove of hypothetical questions that are improperly presented to us for resolution. *Id.* Despite our frequent disapproval of certified questions improperly presented to us, we continue to be confronted with such questions. Moreover, unless it will affect an issue in the pending case, we are unwilling to answer a particular question. In this instance, we are of the opinion that both questions 1 and 4 are "not so obscure or enigmatic as to preclude its successful resolution by the trial justice." *Id.* Therefore, because questions 1 and 4 have no references to the case at hand, we decline to answer them. We shall proceed to answer questions 2, 3, and 5 mindful, however, of the limited record that we have before us.

### Question 2

Question 2 asks this Court to consider whether the physical presence of a police officer during an arrestee's telephone conversation is a *per se* violation of § 12–7–20. Section 12–7–20 states as follows:

"**Right to use telephone for call to attorney-Bail bondsman.**—Any person arrested under the provisions of this chapter shall be afforded, as soon after being detained as practicable, not to exceed one hour from the time of detention, the opportunity to make use of a telephone for the purpose of securing an attorney or arranging for bail; provided, however, that whenever a person who has been detained for an alleged violation of the law relating to drunk driving must be immediately transported to a medical facility for treatment, he or she shall be afforded the use of a telephone as soon as practicable, which may not exceed one hour from the time of detention. The telephone calls afforded by this section shall be carried out in such a manner as to provide confidentiality between the arrestee and the recipient of the call."

Pursuant to this section, an arrestee suspected of driving under the influence must be given an "opportunity to make use of a telephone for the purpose of securing an attorney or arranging for bail." Section 12–7–20. It is patently clear that this telephone call must "be carried out in such a manner as to provide confidentiality between the arrestee and the recipient of the call." *Id.* One of the purposes of providing a confidential phone call is to allow for a meaningful exchange between the suspect and his attorney. *See Bickler v. North Dakota State Highway Commissioner,* 423 N.W.2d 146, 147 (N.D.1988). Although the right to privacy is inherent in the right to confer with counsel, with respect to a DUI case, the degree of privacy that is required must be balanced against the need for a timely and accurate breathalyzer test. *Id.;* *see also Farrell v. Municipality of Anchorage,* 682 P.2d 1128, 1130 (Alaska Ct. App.1984); *State Department of Public Safety v. Kneisl,* 312 Minn. 281, 251 N.W.2d 645 (1977). To insure the integrity of a breathalyzer test, an officer will often continuously monitor the suspect, albeit from a distance, to whatever extent is deemed appropriate under the circumstances. *Bickler,* 423 N.W.2d at 147–48. Moreover, reasonable monitoring of a detainee, via soundproof window viewing, si-

lent video monitoring, or other means of observance, may be necessary for security reasons such as the prevention of escape, suicide, and to prevent the ingestion of substances which might alter a breath or blood test. *See generally Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970); *Seiler v. City of Bethany,* 746 P.2d 699 (Okla.Ct.App.1987).

Some jurisdictions have adopted the general rule that a detainee's privacy interest during the processing of an arrest is sufficiently protected by the requirement that officers stand "out-of-earshot." *See Bickler,* 423 N.W.2d at 148; *see also Kneisl,* 251 N.W.2d at 649. While we find it unnecessary to adopt this test, we conclude that a defendant must be given a reasonable opportunity to make a confidential telephone call. We are not satisfied that § 12–7–20 is violated by the mere presence of the police officer during a telephone conversation and note that at best, the conversation is one-sided. However, we conclude that a suspect is entitled, at minimum, to a telephone call free of charge on an unrecorded line, provided that the call is "for the purpose of securing an attorney or arranging for bail." Consequently we answer question 2 in the negative, but find that a defendant must be afforded a reasonable opportunity to make a confidential telephone call.

### Question 3

■ Question 3 asks whether § 12–7–20 is violated where a police officer fails to inform a suspect of his or her right to a confidential telephone call. Thus, Carcieri argues that § 12–7–20 must be construed not only to impose an affirmative duty upon the police department to insure that a suspect is afforded a confidential telephone call, but that the right is violated "when a police officer does not notify the defendant of his right to a confidential telephone call." The state maintains that, although an arresting officer is required under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) to inform a criminal defendant of certain enu-

merated rights prior to undertaking a custodial interrogation, an arresting officer has no duty to inform a criminal defendant of other constitutional or statutory rights unless the statute specifically requires the arresting officer to do so. Although we agree that a suspect's right to a confidential telephone call in the course of a DUI arrest does not rise to the level of a constitutional right, we also recognize that in order to enjoy the benefit mandated by § 12–7–20, a suspect must be informed of his or her right to a confidential telephone call.

■ Although we acknowledge that § 12–7–20 on its face contains no requirement of notification, we conclude that notice is mandatory. However, the failure to notify a suspect of his right to use a telephone is not fatal to the state's case unless a defendant is prejudiced thereby. Such prejudice is obviously absent in this case since the defendant made three telephone calls. We have consistently taken the position that the intention of the Legislature controls our construction of the mandatory or directory character of statutory provisions. *See In re Sabetta,* 661 A.2d 80, 83 (R.I.1995); *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990). It is clear that the Legislature, in enacting § 12–7–20, intended that a DUI suspect must be afforded an opportunity to exercise the rights contained therein. Accordingly, we find that § 12–7–20 mandates that a police officer not only provide notice of a suspect's right to a confidential telephone call, but also a reasonable opportunity to speak privately with the recipient of the call, if the call was made for the purpose of securing an attorney or bail. *See, e.g., Farrell,* 682 P.2d at 1131 (defendant given no reasonable opportunity to communicate privately with his attorney where a police officer stood beside him and took notes pertaining to the substance of the conversation).

■ It is important to note that certain DUI arrest procedures, such as those outlined in the "Rights For Use At Sta-

tion" form, are universally employed by police departments throughout the State of Rhode Island. This standard form contains the following language in reference to the suspect's right to a telephone call: "A telephone is available for you to contact an attorney * * * A telephone is available for you to arrange for any additional [chemical tests] * * * [and] * * * You may now use the telephone." We are satisfied that the aforementioned language which contains three separate notifications within the "Rights For Use At Station" form provides adequate notice to the suspect of his or her rights under the statute. Therefore, we answer question 3 by concluding that a suspect has a right to a confidential telephone call, and that the obligation of the arresting officer to inform the suspect of this right is satisfied by the use of the "Rights For Use At Station" form.

### Question 5

The final question we are asked to consider is whether a violation of § 12–7–20 requires a dismissal of the DUI charges against Carcieri. Specifically, Carcieri argues that the actions of the police interfered with his right to counsel, which would require dismissal of the impending DUI charge. With respect to the issue of dismissal, the United States Supreme Court has determined that if "the prosecution has improperly obtained incriminating information from the defendant in [violation of his constitutional or statutory rights] * * * the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted." *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568 (1981). Moreover, certain violations of an arrestee's rights may be entirely disregarded as harmless error. *Id.* at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 568.

 When determining the appropriate remedy for police or prosecutorial misconduct, we will not dismiss a charge against a defendant unless that defendant has made a showing of demonstrable prejudice, or a substantial threat thereof. *Id.* at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 569. Moreover, dismissal in criminal cases is employed only as a last resort, and is limited to cases of extreme and substantial prejudice. *See generally State v. Musumeci*, 717 A.2d 56, 63 (R.I.1998); *State v. DiPrete*, 710 A.2d 1266, 1274 (R.I.1998). The United States Supreme Court stated that its "approach has * * * been to identify [the violation] and then neutralize the taint by tailoring relief appropriate in the circumstances to assure" that the defendant does not suffer prejudice. *Morrison*, 449 U.S. at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 568. Accordingly, we find that each alleged violation of § 12–7–20 must be considered on a case-by-case basis to determine the appropriate remedy.

In *Morrison* the defendant, Hazel Morrison, secured counsel because she was indicted for distributing heroin. Thereafter, two individuals from the Drug Enforcement Agency attempted to obtain statements from Morrison in the absence of counsel, and made several remarks to her insisting that the counsel of her choice was incompetent. 449 U.S. at 362, 101 S.Ct. at 666, 66 L.Ed.2d at 566. Despite the persistence of the agents seeking to elicit information, Morrison refused to cooperate and did not supply them with any incriminating information pertinent to her case. *Id.* at 362–63, 101 S.Ct. at 666–67, 66 L.Ed.2d at 567. Morrison then moved to dismiss the indictment based on a violation of her right to counsel. *Id.* at 363, 101 S.Ct. at 667, 66 L.Ed.2d at 567. The Court found that Morrison has demonstrated no prejudice with respect to her right to counsel, and therefore had not presented any justification for dismissing the criminal proceeding against her. 449 U.S. at 366, 101 S.Ct. at 669, 66 L.Ed.2d at 569.

 Similarly, the facts in the instant case are insufficient to support an argu-

ment for dismissal of the charges. There is no evidence that the police officer obtained any incriminating evidence against Carcieri that could be utilized at trial. Moreover, the argument that Carcieri's statutory right to confer privately with counsel was violated is without merit. Section 12–7–20. This assertion is true since Carcieri was not speaking with his attorney, nor is there any evidence in the record that Carcieri had contacted his "friend" for the purpose of securing counsel. Therefore, absent a showing of substantial prejudice, we answer question 5 in the negative.

In conclusion we answer questions 2 and 5 in the negative, and question 3 in the affirmative, with explanations as provided in this opinion. We decline to answer questions 1 and 4, and we order the papers in this case remanded to the District Court.