STATE

v.

Lewis T. QUATTRUCCI.

No. 2010–97–M.P.

Supreme Court of Rhode Island.

March 9, 2012.

Terence M. Coyne, Department of Attorney General, for State.

Richard S. Humphrey, Esq., Tiverton, for respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

After failing two field sobriety tests, the respondent, Lewis T. Quattrucci, was ar-

rested for driving under the influence and later charged with refusing to submit to a chemical test. The charge subsequently was dismissed by a Traffic Tribunal magistrate on the ground that Mr. Quattrucci had not been afforded a confidential telephone call, as required by G.L.1956 § 12-7-20. The state appealed, and the Traffic Tribunal appeals panel (appeals panel) upheld the magistrate's order dismissing the refusal charge. The District Court later affirmed the appeals panel's decision. On May 6, 2010, we granted the state's petition for a writ of certiorari seeking review of the District Court judgment. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that the issues may be resolved without further briefing or argument. For the reasons set forth in this opinion, we quash the judgment of the District Court and we vacate the dismissal of the refusal charge.

## I

### Facts and Procedural History

On February 29, 2008, Officer Randy Bryant, a patrolman in the Warren Police Department, arrested Mr. Quattrucci for driving under the influence of liquor or drugs (DUI) after Mr. Quattrucci failed two field sobriety tests. At a Traffic Tribunal hearing held on April 7, 2008, Officer Bryant testified that he read Mr. Quattrucci his rights at the scene of the arrest [1] and then drove him to the Warren police station. According to Officer Bryant, after their arrival at the station, Mr. Quattrucci was seated in the "Breathalyzer Room," [2] where Officer Bryant and another officer observed him for a fifteen-minute period. [3]

Officer Bryant further testified that after the observation period, he read Mr. Quattrucci his "Rights For Use At Station." [4] According to Officer Bryant, he

---

1. Officer Bryant testified that he read from a document entitled "Rights For Use At Scene" that states:

   "You are suspected of driving while under the influence of intoxicating liquor and/or drugs.

   "You have the right to remain silent. You do not have to answer any questions or give statements. If you do answer questions or give statements, they can and will be used in evidence against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be provided for you.

   "You have the right to be examined at your own expense immediately by a physician selected by you. You will be afforded a reasonable opportunity to exercise this right."

2. Officer Bryant testified that the "Breathalyzer Room" is "a booking room," which is where Mr. Quattrucci was observed, booked, read his rights for use at the station, and where he ultimately made the telephone calls at issue in this case.

3. This is typical protocol when a person has been arrested for a DUI. *See State v. Carcieri*, 730 A.2d 11, 14 (R.I.1999) ("To insure the integrity of a breathalyzer test, an officer will often continuously monitor the suspect, albeit from a distance, to whatever extent is deemed appropriate under the circumstances.").

4. The "Rights For Use At Station" form, which was provided and read to Mr. Quattrucci, serves to inform an arrestee suspected of a DUI of the charge he or she faces, and it requests in writing that the arrestee "submit to a chemical test." This form additionally provides notice to the arrestee of his or her rights. Specifically, it informs the arrestee that he or she may have a physician of his or her choosing administer any additional chemical tests, that he or she does not have to submit to the chemical test, and that mandatory sanctions will be imposed if he or she does not submit to the chemical test. The form also provides a space for the arrestee to indicate, via signature, whether he or she agrees or refuses to submit to the chemical test. Finally, this form specifically states: "A

advised Mr. Quattrucci that he was going to ask him whether he wanted to take a chemical test. Officer Bryant also told Mr. Quattrucci: "Before you answer that, I'm gonna let you use the telephone." Additionally, Officer Bryant informed Mr. Quattrucci: "You can call an attorney or whoever you want to call." Mr. Quattrucci replied that he did want to use the telephone, and when Officer Bryant asked "if he wanted to make a confidential [tele-]phone call or not," Officer Bryant testified that Mr. Quattrucci "stated he didn't care."

While testifying, Officer Bryant could not remember whether Mr. Quattrucci used his own cellular telephone or a telephone provided by the police department. He did recall, however, that he and another officer were in the same room with Mr. Quattrucci when he used the telephone.[5] Officer Bryant stated that he was doing work on a computer while sitting at a desk approximately five feet away from where Mr. Quattrucci sat facing him.[6] He also testified that the other officer was approxi-

mately eight to ten feet away from Mr. Quattrucci at that time. Officer Bryant admitted that he could hear Mr. Quattrucci talking on the telephone, but stated he did not "really recall" what was being said during the telephone conversations.[7] Officer Bryant, nonetheless, stated that he knew that Mr. Quattrucci had been having trouble getting in touch with someone because Mr. Quattrucci informed him that no one would answer his telephone call and then asked if he could use the telephone again.[8] Officer Bryant testified that he told Mr. Quattrucci that he could "[m]ake as many [tele]phone calls as [he could] as long as [he could] get in touch with somebody."

Officer Bryant attested that "the whole [tele]phone call process" took approximately ten minutes, and that during that time, Mr. Quattrucci never asked to go to the other side of the room or made any movements that indicated he might want to go to the other side of the room.[9] According

---

telephone is available for you to contact an attorney. * * * A telephone is available for you to arrange for any additional tests. * * * You may now use the telephone."

5. Officer Bryant testified that the Warren police station used to have a "confidential [tele-]phone call alcove," which had a small round window on the door. Officer Bryant further testified that the room was "where people went to make private [tele]phone calls." Unfortunately, Warren no longer has such a room because the alcove is used as an "Evidence Room" instead.

6. Upon the magistrate's questioning of Officer Bryant about the Breathalyzer Room, Officer Bryant testified that there was a camera in the corner of the room that provided both a visual and audio recording; however, when Mr. Quattrucci was booked, the audio was broken and consequently, only the video portion of the booking procedure and the telephone call was recorded.

7. During direct examination, the officer stated: "I don't really recall you know, what he

was saying. * * * I know he asked for a ride home. I remember that." During cross-examination, he said: "I could hear him, but I wasn't really listening to the conversation. I was on the computer."

8. Officer Bryant testified that Mr. Quattrucci "made a couple of [telephone calls]" because "[h]e had trouble getting through to a few people. * * * [T]hen he finally contacted his friend that was coming to get him." Officer Bryant further testified that he knew Mr. Quattrucci had "asked for a ride home." Additionally, when questioned about Mr. Quattrucci's demeanor while talking on the telephone, Officer Bryant replied that "[h]e seemed like he was a little upset because his girlfriend wouldn't answer the [tele]phone, so he was kind of frustrated in that manner."

9. When the state asked Officer Bryant whether Mr. Quattrucci "ever [got] out of his chair," Officer Bryant replied: "No, we wouldn't allow it. * * * We wouldn't allow [him] to walk around the room."

to Officer Bryant, after Mr. Quattrucci completed his telephone calls, Officer Bryant asked him whether he wanted to take a chemical test. Mr. Quattrucci refused this request and signed the "Rights For Use At Station" form under the line stating: "I acknowledge that the above rights have been read to me. I REFUSE to take a chemical test at the officer's request."

At the close of the hearing, Mr. Quattrucci asked for his case to be dismissed, arguing that under § 12–7–20, an arrestee is entitled to a confidential telephone call, that it should not be up to the arrestee to pursue a confidential telephone call, and that he had not received a confidential telephone call. The state countered that the refusal charge should not be dismissed solely based on the lack of a confidential telephone call "unless some extreme prejudice [arose] from the lack of confidentiality." Ultimately, the magistrate concluded that an arrestee is entitled to a confidential telephone call, and he held that when an arrestee "decides or elects to utilize his right to a [tele]phone call, it shouldn't be impeded by * * * the next question of, 'Okay, well do you want it to be confidential or not'? It's got to be confidential." Accordingly, the magistrate dismissed the refusal charge and entered an order to this effect.[10]

The state subsequently filed a notice of appeal, which was heard before the appeals panel on September 17, 2008. In September 2009, the appeals panel issued a comprehensive decision denying the state's appeal and holding that there was "reliable, probative, and substantial evidence in the record that Officer Bryant did not provide [Mr. Quattrucci] with a confi-

dential [tele]phone call to an attorney of his choosing."[11] In reaching its conclusion, the appeals panel first interpreted the word "confidentiality" in the context of § 12–7–20 to require that a call be "made in complete privacy so as to ensure that the information communicated by the arrested person to his or her attorney is not widely disseminated to third parties, including law enforcement." The appeals panel further held that "it is impossible to reconcile the legislative intent to maintain the integrity of attorney-client communications with a conception of 'confidentiality' that allows a law enforcement officer to remain in the booking room and within earshot while an arrested person utilizes the telephone to contact his or her attorney." The appeals panel also stated:

> "An arrestee certainly can choose to waive his or her right to make a [tele]phone call in the first instance; however, once the decision has been made to make a [tele]phone call, the confidentiality provisions of § 12–7–20 become fully operative and the police have an affirmative obligation to leave the booking room and to discontinue all audio surveillance for the duration of the confidential call."

The state filed an administrative appeal in District Court on September 18, 2009, arguing that the magistrate's order and the subsequent decision of the appeals panel were "contrary to law because there was no showing of substantial and extreme prejudice," as required by this Court in *State v. Carcieri*, 730 A.2d 11, 16 (R.I. 1999), and in *State v. Veltri*, 764 A.2d 163, 168 (R.I.2001) (both cases held that in a DUI case, dismissal is not a permissible sanction in a § 12–7–20 violation absent a

---

**10.** The magistrate sustained the charges of speeding, refusing to submit to a preliminary breath test, and the right half of roadway violation against Mr. Quattrucci.

**11.** The decision of the appeals panel was not unanimous; a dissenting opinion also was issued.

showing of substantial prejudice). The District Court, in a decision rendered on January 26, 2010, affirmed the appeals panel's decision and entered a judgment to that effect. On March 12, 2010, the state filed a petition for a writ of certiorari, which subsequently was granted by this Court.

## II

### Standard of Review

"[T]his Court's review on writ of certiorari is limited 'to examining the record to determine if an error of law has been committed.'" *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I.2006) (quoting *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002)). "Questions of law * * * are not binding upon the [C]ourt and may be reviewed to determine what the law is and its applicability to the facts." *State v. Faria*, 947 A.2d 863, 867 (R.I.2008) (quoting *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I. 1991)). "We reverse only when we find pursuant to the petition that the lower-court judge committed an error of law." *Id.* (quoting *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994)).

## III

### Discussion

The state argues that the appeals panel and District Court decisions upholding the dismissal of Mr. Quattrucci's charge for refusing to submit to a chemical test based on an alleged § 12–7–20 violation are "unsustainable." The state contends that there was not a qualifying § 12–7–20 violation in Mr. Quattrucci's case "and, even if there had been, dismissal for any such violation was plainly unwarranted." To support its contention that there was not a § 12–7–20 violation, the state offers a three-fold argument. First, it asserts that Mr. Quattrucci waived whatever right he had to a confidential telephone call by indicating that "he did not care" whether his telephone call was confidential. Secondly, the state maintains that Mr. Quattrucci failed to present any evidence that the telephone calls he made were "for the purpose of securing an attorney or arranging for bail," as required by the statute. Thirdly, the state argues that the mere presence of Officer Bryant and a colleague in the area of Mr. Quattrucci's telephone conversations was not a *per se* § 12–7–20 violation. Alternatively, the state contends that, even if there had been a § 12–7–20 violation, dismissal of the refusal charge was not warranted because Mr. Quattrucci did not show that he had been prejudiced substantially by the lack of confidentiality, and further, because the right to make a telephone call simply does not apply in a civil proceeding.

Mr. Quattrucci counters that when there has been a failure to provide an arrestee with a confidential telephone call, as it relates to the civil charge of refusal to submit to a chemical test, the only proper remedy is the dismissal of the charge. To bolster his argument, Mr. Quattrucci points to the appeals panel's statement within its written decision that "no other discretionary measures in civil chemical test refusal cases can possibly neutralize the harmful effect of the failure of law enforcement to provide arrestees with a fully confidential [tele]phone call * * *."

### A

### Applicability of § 12–7–20 to the Civil Charge of Refusal to Submit to a Chemical Test

We first address the question of whether the right to a confidential tele-

phone call, as provided under § 12–7–20, applies in the context of a civil violation proceeding. This Court previously has addressed § 12–7–20 as it relates to a defendant who is criminally charged with a DUI. *See Veltri,* 764 A.2d at 167–68; *Carcieri,* 730 A.2d at 16. Yet, we never have addressed it in regard to the chemical-test refusal charge, which is a civil, rather than a criminal, infraction. *See State v. Hart,* 694 A.2d 681, 682 (R.I.1997) ("the breathalyzer statute is civil rather than criminal in nature"). Section 12–7–20 provides in pertinent part;

**"Right to use telephone for call to attorney—Bail bondsperson.**

"Any person arrested under the provisions of this chapter shall be afforded, as soon after being detained as practicable, not to exceed one hour from the time of detention, the opportunity to make use of a telephone for the purpose of securing an attorney or arranging for bail * * *. The telephone calls afforded by this section shall be carried out in such a manner as to provide confidentiality between the arrestee and the recipient of the call."

We previously have stated that "implied-consent cases involve a possibility of both civil and criminal proceedings whether the arrestee decides to submit to the test or to refuse, and the implications of the arres-

tee's decision may redound into both civil and criminal proceedings and penalties." [12] *Dunn v. Petit,* 120 R.I. 486, 490, 388 A.2d 809, 811 (1978). We also have held, however, "that the DUI and the refusal statutes are two separate and distinct offenses," and we have acknowledged the existence of "an important temporal distinction between the two." *State v. DiStefano,* 764 A.2d 1156, 1162 (R.I.2000).

"The offense of refusal under [G.L.1956] § 31–27–2.1 can arise only after a driver has been arrested, informed of his or her rights, asked to submit to a chemical test, and refused, whereas DUI cases begin with an arrest based upon probable cause to believe that the driver had been driving while under the influence of alcohol or drugs * * *. Although the offense of DUI * * * already has been committed, unless and until the suspect actually refuses to submit to a test, he or she has not committed the additional offense of refusal * * *." *DiStefano,* 764 A.2d at 1162.

The state argues "that a breathalyzer refusal charge is not at all dependent upon compliance with § 12–7–20" because "[a]ll the myriad prerequisites for sustaining a breathalyzer refusal charge are specifically contained and enumerated within * * * §§ 31–27–2.1—31–27–3." [13] The state con-

---

12. Under G.L.1956 § 31–27–2.1, "a motor vehicle operator impliedly consents to take a chemical test to determine the alcohol content of his blood in the event he is arrested on the reasonable belief that he is driving under the influence of alcohol." *Dunn v. Petit,* 120 R.I. 486, 489–90, 388 A.2d 809, 811 (1978).

13. Specifically, § 31–27–2.1(c) requires a hearing judge to sustain a violation of refusal to submit to a chemical test if he or she makes four findings. Accordingly, the judge must find: (1) that "the law enforcement officer making the sworn report had reasonable grounds to believe that the arrested person had been driving a motor vehicle within this

state while under the influence of [drugs or alcohol]"; (2) that the arrestee "refused to submit to the tests upon the request of a law enforcement officer"; (3) that the arrestee "had been informed of his or her rights in accordance with § 31–27–3," and; (4) that the arrestee "had been informed of the penalties incurred as a result of the noncompliance * * *." Section 31–27–2.1(c). Section 31–27–3 provides that, "immediately after the person's arrest," the arrestee must be informed that he or she has the right to select and be examined by a physician, albeit at his or her own expense, and that the arrestee be afforded with a "reasonable opportunity to exercise the right." Additionally, § 31–27–3

tends, "[h]ad the General Assembly also wanted to condition a sustainable breathalyzer refusal violation upon compliance with § 12–7–20, it would have included such a mandate within the relevant breathalyzer refusal provisions." Furthermore, the state contends that "it makes sense that the General Assembly would not have conditioned a sustainable § 31–27–2.1 breathalyzer refusal charge upon compliance with the confidential telephone call provisions of § 12–7–20" because this Court, in *Dunn*, 120 R.I. at 492, 388 A.2d at 812, held "that there is [no] constitutional right to counsel at the moment of decision concerning submission to a breathalyzer test." [14]

Based upon our review of the record and the deference we accord to the magistrate's findings of historical fact, we are satisfied that Mr. Quattrucci indeed was entitled to the use of a telephone to call an attorney under § 12–7–20. The record of this case reveals that Officer Bryant, at one o'clock in the morning, observed Mr. Quattrucci operating a motor vehicle at a high rate of speed and crossing the solid yellow center line twice. After the vehicle came to a stop, Officer Bryant detected an odor of alcohol on Mr. Quattrucci's breath, observed that his eyes were watery and bloodshot, and Mr. Quattrucci admitted that he had just left a local bar establishment. The officer proceeded to administer two field sobriety tests, both of which Mr. Quattrucci failed. Mr. Quattrucci then refused to submit to an on the scene preliminary breath test and was placed under arrest for a DUI.

When Mr. Quattrucci was brought to the Warren police station, he was under arrest

for suspicion of driving under the influence of alcohol and subject to potential criminal charges based upon the officer's observation of him. The fact that he subsequently refused to submit to a chemical test, thereby becoming subject to an additional civil charge, did not vitiate his right to make a telephone call in the first instance. Clearly, Mr. Quattrucci was "arrested" as contemplated by § 12–7–20, and he therefore was entitled to the protections afforded by the statute.

## B

### Purpose of the Telephone Call

■ We next turn to the question of whether the Warren Police Department violated § 12–7–20 by failing to afford Mr. Quattrucci "the opportunity to make use of a telephone for the purpose of securing an attorney or arranging for bail." Section 12–7–20. When this Court reviews matters of statutory interpretation, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Robinson*, 972 A.2d 150, 158 (R.I.2009) (quoting *Such v. State*, 950 A.2d 1150, 1156 (R.I. 2008)).

As noted *supra*, this Court previously has addressed § 12–7–20 as it relates to an arrestee who subsequently is charged with the criminal offense of a DUI. *See State v. Veltri*, 764 A.2d 163 (R.I.2001); *State v. Carcieri*, 730 A.2d 11 (R.I.1999). Although the case under review arises in the context of a civil violation, we find the reasoning in *Carcieri* to be persuasive. In *Carcieri*, 730 A.2d at 15, we said:

places the burden of proving that the arrestee "was afforded that opportunity" on the state.

14. We note that our opinion in *Dunn v. Petit*, 120 R.I. 486, 388 A.2d 809 (1978), predates

the General Assembly's enactment of G.L. 1956 § 12–7–20 in 1989. Section 12–7–20, as enacted by P.L.1989, ch. 122, § 1.

"It is clear that the Legislature, in enacting § 12–7–20, intended that a DUI suspect must be afforded an opportunity to exercise the rights contained therein. Accordingly, we find that § 12–7–20 mandates that a police officer not only provide notice of a suspect's right to a confidential telephone call, but also a reasonable opportunity to speak privately with the recipient of the call, if the call was made for the purpose of securing an attorney or bail."

In the instant case, the only evidence adduced during trial concerning the nature of Mr. Quattrucci's telephone calls was Officer Bryant's testimony that Mr. Quattrucci called "his friend that was coming to get him" and "his girlfriend * * * [who] wouldn't answer." Mr. Quattrucci did not present any evidence to show that the purpose of his telephone calls was to secure or to talk to an attorney. The confidentiality requirement of § 12–7–20 clearly does not attach to any and every telephone call an arrestee makes while at the police station; rather, it only attaches when the purpose of the call is to speak to an attorney or to arrange for bail.

There being no evidence presented that Mr. Quattrucci made, or wished to make, a telephone call for the purpose of securing an attorney, nor any showing that Mr. Quattrucci suffered substantial and extreme prejudice because he did not receive a private telephone call, we conclude that the Traffic Tribunal magistrate committed an error of law in ruling that the Warren police violated Mr. Quattrucci's rights under § 12–7–20.

## IV

### Conclusion

For the reasons set forth in this opinion, we quash the judgment of the District Court, and we vacate the dismissal of the charge alleging that Mr. Quattrucci refused to submit to a chemical test. We remand the record to the District Court for further proceedings consistent with this opinion.

Justice ROBINSON did not participate.